# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUNIOR JUMP HOLNESS,<br>    *Plaintiff*,<br><br>v.<br><br>GERARD GAGNE *et al.*,<br>    *Defendants*. | No. 3:18-cv-1752 (JAM) |

## INITIAL REVIEW ORDER

Plaintiff Junior Jump Holness is in the custody of the Connecticut Department of Correction (DOC). He has filed this complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 to challenge his treatment by prison officials. After an initial review, the Court concludes that Holness's claim for deliberate indifference to serious medical need should proceed against four of the defendants.

### BACKGROUND

Holness's filing, while labeled a single complaint, actually contains four sections, with exhibits mixed in throughout. Unlike most complaints, which begin at paragraph one and continue sequentially, each section of Holness's complaint begins again at paragraph one. The first section covers incidents that allegedly occurred in September and October of 2018. Doc. #1 at 1-24. The second and third sections span November 2017 through April 2018, *id.* at 31-35 & 36-42, and the fourth and final section pertains to June of 2018, *id.* at 43-68. Given the timeline and the unusual formatting of Holness's filing, with four sections numbered separately and broken up by exhibits, Holness has essentially filed four separate complaints.

The first section of the complaint alleges the following facts: Holness was transferred to Corrigan Correctional Center on September 11, 2018, where mental health officials placed him

1

in restrictive housing on behavior observation status. Doc. # 1 at 5. The following day, defendants Dr. Gagne and Nurse Brennan met with him and indicated that he would be removed from behavior observation status. Approximately two days later, Holness learned that Gagne had discontinued the psychiatric medications that had been prescribed to treat his mental health conditions, including emotional distress, post-traumatic stress disorder, and schizophrenia. *Id.* at 6. When Holness confronted Gagne and Brennan about this, Gagne said Holness wouldn't get his medications due to something he had allegedly said to Gagne while confined at a different facility. Gagne said, "[r]emember you called me a homo at Northern [Correctional Institution], that's exactly why I took you off so you can assault staff[] so I can send you back to N.C.I." Brennan then stated, "you gets nothing." *Id.*

Nursing Supervisor Phillips told Holness that she "was gonna make [his] time here at Corrigan hard" because he had filed a complaint against two members of her staff, defendants Melissa Brown and Sarah Trickett, for maliciously denying him medical treatment. *Id.*

On September 16, 2018, Holness sent an inmate request form to defendant Dr. Burns, the director of psychiatric services for the D.O.C., stating that he had been taken off his medications and asking Burns to "address this immediately." *Id.* at 12.

In addition to his mental health problems, Holness also suffers from breathing issues, for which the doctor had ordered the use of a breath pump every four-to-six hours as needed. *Id.* at 7. Holness alleges that he was supposed to be transported to Court by D.O.C. staff rather than Court Marshals, because he needs access to his pump but is not permitted to have it on his person. On September 20, 2018, he was transported to Connecticut Superior Court. He says that he needed his pump; it is not clear whether or not he got it. Holness also alleges that he was sent to MacDougall-Walker Correctional Institution ("MWCI") on court hold even though he "was

not suppose[d] to be there due to a staff conflict profile that was clearly established [in] the system." *Id.* at 7.

When Holness returned from court, he noticed that some of his property was damaged or missing. He complained to defendant Warden Faucher about the property and staff hold issues. He also brought up the inhaler issue, and Faucher told him that "we have full knowledge and that [he] would be sent [to MWCI] for Court and if [he] need[s] the pump they would bring it to [him]," even though he "is suppose[d] to be special transport to Court wherein [he] can bring [his] pump." *Id.*

On September 26, 2018, Holness was again sent to MWCI in advance of his court appearance. *Id.* at 8. He was in court later that morning when he started having breathing problems. The Judge told the Marshals to contact the facility or call an ambulance. The Marshal called the facility and "even told the facility that you guys know he has serious medical conditions and should be facility transport to Court." *Ibid.* The facility said they would send someone with the pump but never did. Holness was sent to MWCI to wait for transport back to Corrigan. While at MWCI, he passed out due to low oxygen level and high blood pressure, which he believes "was due to lack of [his] inhaler pump." *Id.* Holness was given medication to manage these symptoms, and Nurse Debbie, who is not a defendant, called the on-call doctor to ask if Holness needed to be brought to a hospital, as his records indicated that he was at risk of stroke. It is not clear from the complaint whether he was sent to the hospital. *Id.* at 10.

After Holness returned to Corrigan, Faucher "made it very clear" to him that he would not receive DOC transport to court because of budget cuts, despite his known medical conditions. *Id.* at 9. As of the time he filed the complaint, Holness was still not receiving his

3

psychiatric medications. *Id*. at 10. On December 6, 2018, Holness informed the Court that he had been transferred to Hartford Correctional Institution. Doc. #8.

As noted above, the complaint contains three more sections. But I will not review the facts of these three sections at the present time because, as discussed below, it appears that these sections of the complaint may not proceed until such time as Holness pays a filing fee.

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the compliant, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

*In forma pauperis status*

The Court granted Holness's motion to proceed *in forma pauperis* (IFP) on November 15, 2018. Now, however, further review shows that the complaint is really four complaints, and that all but the first complaint-within-the-complaint are subject to dismissal absent payment of the filing fee. As amended by the Prison Litigation Reform Act, the statute that governs applications to proceed *in forma pauperis* provides that no prisoner shall "bring a civil action or appeal a judgment in a civil action or proceeding under this section [allowing prisoner to proceed *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The Second Circuit has held that the "unmistakable purpose [of the statutory exception] is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger." *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). In keeping with that purpose, "the complaint of a three-strikes litigant must reveal a nexus between the imminent danger it alleges and the claims it asserts" in order to qualify for the imminent danger exception. *Id.* at 298 (internal quotation marks omitted).

In deciding whether such a nexus exists, courts consider causation and redressability: "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." *Id.* at 299. The exception only applies where the danger is imminent at the time the complaint is filed. *Id.* at 296 (finding that a "three-strikes

litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed").

The second and third complaints are identical to complaints that Holness filed in a separate lawsuit and that were dismissed by Judge Shea under the three strikes rule. *See Jump v. Rivera et al.,* 18cv162(MPS) (D. Conn. 2018). Judge Shea denied Holness's motion to proceed *in forma pauperis* and—after Holness failed to pay the filing fee—dismissed both his original complaint (replicated as the second complaint-within-a-complaint now before me) and his amended complaint (replicated as the third compliant-within-a-complaint now before me). *Id.* at Docs. #9 and #12. I will similarly dismiss all claims contained in these complaints unless Holness chooses to pay the filing fee within 21 days.

The fourth complaint alleges conduct substantially similar to that alleged in the second and third complaints, including discriminatory remarks by prison officials and unsafe shower conditions due to the absence of mats on the shower floor. Even if similar allegations had not already been dismissed by Judge Shea, Holness's attempt to bring these allegations *in forma pauperis* is also barred by the three strikes rule. Holness complains of problems he had at Hartford Correctional Center in June of 2018. Holness alleges that he fell in the shower because there were no mats on floor. Doc. #1 at 43. The fall caused back pain and left him with a swollen left foot and "minor scratches on [his] hand and back area." *Ibid.* Holness also alleges that one of the defendants, Deputy Warden Gerald Wood, stood behind him during religious services in an attempt to intimidate him. *Id.* However, by the time Holness filed the complaint on October 23, 2018, he had been transferred to Corrigan Correctional Institution. Doc. #1 at 5. Any alleged danger presented by the missing shower mats or by defendant Wood's comments was not imminent at the time Holness filed the complaint. Accordingly, I will dismiss the fourth

complaint unless Holness pays the filing fee within 21 days or unless Holness shows that he is imminent danger of physical danger from the conditions identified in the fourth complaint now that he has been transferred back to Hartford Correctional Center.

The only complaint that initially appears to qualify for the imminent danger exception is the first one, in which Holness alleges that he was taken off all of his psychiatric medications, despite suffering from schizophrenia, and that he was not permitted access to his inhaler on trips to and from court, despite the risks this posed to his health. *Id.* at 5-7. Holness alleges that this behavior was ongoing as of the day he filed his complaint. This fits with the purpose of the imminent danger exception to the three-strikes rule, which "is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger." *Pettus*, 554 F.3d at 297. While Holness only explicitly asks for money damages under the heading "request for relief," he also wrote under this heading "making the appropriate changes to it facilities." Doc. #1 at 68.[1]

Interpreting his complaint liberally, as I am required to interpret all *pro se* complaints, I understand Holness to be asking for an injunction—for the Court to intervene to stop the danger he claims to face. Although I will provisionally permit Holness to proceed for now *in forma pauperis* as to this claim, if defendants believe that there is no basis for a finding of imminent danger of physical injury, then defendants may promptly file a motion for reconsideration of the Court's grant of *in forma pauperis* status along with appropriate evidentiary materials. *See Shepherd v. Annucci*, -- F.3d. --, 2019 WL 1590894, at *3 (2d Cir. 2019).

---

[1] Despite its placement on the last page of his filing, I understand this page to be part of Holness's first complaint because it is dated October 18, 2018, just five days before he filed the complaint, and because the first part of a similar form appears at the start of the filing, Doc. #1 at 2-3.

The complaint also alleges that some of Holness's property was lost or destroyed. Though this claim does not involve imminent danger, I will address the claim because the Second Circuit has held that "a plaintiff filing IFP on the basis of the imminent danger exception can proceed with all claims in her complaint." *Chavis v. Chappius*, 618 F.3d 162, 172 (2d Cir. 2010).

### *Sovereign Immunity*

To the extent that Holness seeks monetary damages from defendants in their official capacities, the claims are barred by the Eleventh Amendment. See *Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). All such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### *Mootness*

I will dismiss as moot all claims for injunctive relief against six of the seven defendants referenced in the complaint: Gerard C. Gagne, Janine Brennan, Stephen Faucher, Melissa A. Brown, Sarah H. Trickett, and Kara J. Phillips. All of these defendants are based at Corrigan Correctional Institution. Holness's claims for injunctive relief against them are moot because he is no longer confined at Corrigan, where the alleged unconstitutional conduct occurred. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against *officials of that facility*.") (emphasis added); *see also Jacques v. Dep't of Corr.*, 2018 WL 5619715, at *3 (D. Conn. 2018) (dismissing as moot claims for declaratory and injunctive relief after inmate was transferred). The only defendant against whom the claim for injunctive relief may conceivably proceed is Dr. Craig Burns. Holness is still housed within the DOC, and defendant Burns heads psychiatric services for the whole Department. Holness's claim for

injunctive relief against Burns is not moot, because Burns's position in relation to Holness has not changed—he still heads psychiatric services for the institution in which Holness is incarcerated and is still in a position to intervene to stop the harm.

### *Deliberate indifference to serious medical need*

The status of a plaintiff as either a convicted prisoner or pretrial detainee dictates whether his conditions of confinement are analyzed under the Eighth or Fourteenth Amendments. Claims of pretrial detainees involving deliberate indifference to medical needs or other unsafe conditions of confinement are considered under the general due process clause of the Fourteenth Amendment, while this type of claim brought by a sentenced prisoner is considered under the cruel-and-unusual-punishment clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29-34 & n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017). It is unclear if Holness was a pre-trial detainee or sentenced prisoner during the incidents at issue here. Records from the Connecticut Department of Correction indicate that Holness was admitted to custody in December 2017 and remains unsentenced. *Connecticut State Department of Correction Inmate Search,* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=345844 (last visited on April 24, 2019). But according to Connecticut Superior Court records, he was sentenced in state court on September 20, 2018 to thirty days' imprisonment for engaging police in pursuit and one year's imprisonment for interfering with an officer or resisting arrest. *State v. Jumpp*, Docket No. M09M-MV17-0456922-S; *State v. Jumpp*, Docket No. M09M-CR17-0212896-S. And the facility where he was housed during the months in question houses both pretrial detainees and prisoners. *See Corrigan-Radgowski Correctional Center*, CONN. DEP'T CORR. (2018), https://portal.ct.gov/DOC/Facility/Corrigan-Radgowski-

CC. Given this uncertainty, the Court will analyze Holness's claims under the more lenient Fourteenth Amendment standard for the purposes of this initial review order.[2]

A deliberate indifference claim under the Fourteenth Amendment has two requirements. First, a pretrial detainee must first show that the medical need was "sufficiently serious" to warrant the need for treatment. See *Darnell*, 849 F.3d at 29. A "sufficiently serious" need is an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. See *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The detainee must further show that the officer acted with at least deliberate indifference (whether in terms of what he actually knew or what he should have known) with respect to furnishing the needed treatment. *See Darnell*, 849 F.3d at 29. Thus, if the medical condition is sufficiently serious to warrant treatment, then in order "to establish a claim for deliberate indifference to [serious medical needs] under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Given Holness's mental health diagnoses—schizophrenia, PTSD, and emotional distress—being denied his psychiatric medication is sufficiently serious to meet the objective prong of the test. *See, e.g.*, *Harvey v. Sawyer*, 2010 WL 3323665, at *7 (plaintiff "was undoubtedly suffering from a serious medical need, whether from bipolar disorder or paranoid

---

[2] Information regarding these convictions and sentences may be found on the State of Connecticut's Judicial Branch website at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Convictions – Search by Docket Number – using the following docket numbers: M09M-MV17-0456922-S and M09M-CR17-0212896-S (last visited on February 4, 2019).

schizophrenia"), *report and recommendation adopted*, 2010 WL 3323669 (N.D.N.Y. 2010); *Guglielmoni v. Alexander*, 583 F. Supp. 821, 826 (D. Conn. 1984) ("Treatment of mental disorders of mentally disturbed inmates is [] a "serious medical need" under *Estelle*.") (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). I factor into this analysis Holness's allegation that Dr. Gagne stated that he took Holness off his medication so that he would assault staff. Doc. #1 at 6. If true, this statement lends support to the finding that Holness posed a serious risk to himself and others when he was not taking his medication.

Holness's breathing problems also constitute a serious medical need. He attached to his complaint a prescription for inhaler use "every 4 to 6 hours as needed" and alleges that he passed out due to breathing issues. Though he does not allege that he never had access to the pump, his allegations that he was transported without it, that Corrigan did not send over his pump even when he experienced breathing issues in court and when a Marshal instructed the facility to send someone, and that he later passed out, all suffice to show that the delay or interruption in his treatment is sufficiently serious to satisfy the objective prong of the test for deliberate indifference to serious medical need. Doc. #1 at 8.

I will evaluate the subjective prong separately for each defendant.

*Burns*

Holness alleges that he wrote to Burns and told him that he was not getting his psychiatric medication. He wrote that "I need my meds back." *Id.* at 12. The allegations support an inference that Burns, as head of psychiatry for the Department of Correction, had access to Holness's medical records and knew or should have known of the severity of his mental health conditions but failed to act to ensure that he got his medication. Without prejudice to Burns's right to seek dismissal as allowed under the federal rules, I conclude at this initial review stage

11

that the complaint adequately alleges facts that—if true—would give rise to plausible grounds for relief under the Eighth or Fourteenth Amendments as to the denial of psychiatric medication.

*Faucher*

Holness alleges that he brought up the breath pump issue with Faucher multiple times and that Faucher said he would continue to be transported to court by the Marshals because of budget issues. This suffices to show that Faucher knew of the serious threat to Holness's health and did not intervene. I find that Holness has stated a claim against Faucher for alleged lack of access to his breath pump. Doc. #1 at 7, 9.

*Gagne and Brennan*

Holness alleges that Gagne took him off his psychiatric medication, which supports an inference that Gagne knew that he had been taking the medication and that he needed it, as does Gagne's statement that without his medication Holness would assault another inmate. Holness alleges that Brennan was present when he asked Gagne about his medications and said "you gets nothing." *Id.* at 6. He further alleges that Brennan's response when he wrote to mental health— that "your meds were changed with your knowledge" and that Gagne had explained the reasoning several times—was a lie. *Id.* at 5 and 11. Reading all allegations in the light most favorable to Holness, I find that he has stated a claim against Gagne and Brennan for deliberate indifference to serious medical need as to his psychiatric medications.

*Phillips, Brown, and Trickett*

Holness alleges that Phillips told him she was going to make his time at Corrigan hard because he had filed a complaint against two members of her staff, Brown and Trickett. He does not allege any other facts about any of these three defendants. Because Holness has not adequately alleged how these defendants were deliberately indifferent to his medical needs, his

claim against them shall be dismissed. To the extent that Holness also intends to state a claim for retaliation against Phillips, he has not alleged that she took adverse action against him. *See Dolan v. Connolly*, 794 F.3d 290, 294-95 (2d Cir. 2015) (listing an adverse action as a required element of a retaliation claim and instructing district courts to "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act").

### *Deliberate indifference to safety*

Pretrial detainees' claims for deliberate indifference to safety are analyzed under the same two-prong test as claims for deliberate indifference to medical needs. To succeed on the objective prong of a claim for unsafe conditions of confinement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30. Holness has not provided any support for his allegation that being placed temporarily at a facility where he had a "staff profile," compromised his safety. Doc. #1 at 7. Without any facts as to what a "staff profile" means, why Holness had one, or what he thought would happen to him during his temporary placement, Holness has not alleged enough facts to support a claim for deliberate indifference to safety as to his temporary placement at MWCI. I need not consider whether the subjective prong is met because Holness has not satisfied the objective prong.

### *Lost property*

Holness claims that unspecified items of his property were taken from his cell at Corrigan. Doc. #1 at 7. Because Holness fails to specify what property was taken and because

Connecticut provides a constitutionally adequate procedure for seeking the return of any lost or missing property, he has failed to allege plausible grounds for relief under the Due Process Clause arising from the failure to return his property. See *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (noting that "Connecticut provides inmates with a remedy for lost or destroyed property" and that the "complaint did not assert that filing a claim with the Claims Commissioner was an inadequate remedy for his lost property claim and thus failed to allege a violation of his due process rights").

## CONCLUSION

Plaintiff's claim as alleged in the first section of his complaint arising from alleged deliberate indifference to serious medical needs will go forward as to defendants Gagne, Brennan, Faucher, and Burns, subject to their right to challenge whether plaintiff's *in forma pauperis* status should be revoked, and/or to seek dismissal pursuant to Fed. R. Cv. P. 12(b)(6). Plaintiff's remaining claims as alleged in the second, third, and fourth sections of the complaint are within the scope of the three-strikes rule pursuant to 28 U.S.C. § 1915(g), and they are subject to dismissal unless plaintiff pays the filing fee within 21 days on **May 15, 2019**. If plaintiff does not pay the filing fee by that date, then these claims are deemed dismissed.

The Court enters the following orders:

(1) **The Clerk shall** verify the current work address for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided by **May 15, 2019**, and report to the Court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be

14

required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, by **May 15, 2019** and to file a return of service by May 24, 2019.

(3) **The Clerk shall** send plaintiff a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **November 20, 2019**. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed by **December 20, 2019**.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to

just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

It is so ordered.

Dated at New Haven this 24th day of April 2019.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge